**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Eleven South LaSalle Associates, L.L.C., | ) | Case No. 06-B-04563 |
| a Delaware limited liability company, | ) | |
| | ) | Honorable Susan Pierson Sonderby |
| Debtor. | ) | |

**~~PROPOSED~~ FINDINGS OF FACT AND CONCLUSIONS OF LAW ~~SUBMITTED BY~~ REGARDING THE MOTION OF JOHN HANCOCK LIFE INSURANCE COMPANY ~~IN CONNECTION WITH ITS MOTION~~ TO MODIFY THE AUTOMATIC STAY TO PROCEED WITH FORECLOSURE**

The following comprise the Court's findings of fact and conclusions of law ~~John Hancock Life Insurance Company ("John Hancock"), submits the following proposed findings of fact and conclusions of law in support of its Motion to Modify the~~ in support of its order granting the motion of John Hancock Life Insurance Company ("John Hancock") to modify the Automatic Stay to Proceed with Foreclosure.[1] The following facts were stipulated to or admitted at the hearing:

**~~Proposed~~ Findings of Fact**

1. Prepetition, John Hancock advanced loans and made other financial accommodations (the "Loans") to the Debtor which are evidenced by a certain Mortgage, Assignment of Leases and Rents and Security Agreement, dated January 19, 2004, a Note and Loan Agreement both dated January 19, 2004, a separate Assignment of Leases and Rents dated January 19, 2004, and other related financing documents (these and all other documents evidencing the Loans are collectively referred to herein as the "Loan Documents").

2. Among other protections, the Loan Documents granted to John Hancock a mortgage and security interest in all of Debtor's assets, including its right, title, interest and estate

[1] The following constitute the Court's findings of fact and conclusions of law under Fed. R Bank. P. 7052, made applicable to these proceedings by Fed. R Bankr. P. 9014. Any and all findings of fact shall constitute findings of fact, even if they are stated as conclusions of law, and any and all conclusions of law shall constitute conclusions of law, even if they are stated as findings of fact.

in and to the real property located at 11 South LaSalle Street, Chicago, Illinois (the "Mortgaged Property").

3. In accordance with the Loan Documents and UCC Financing Statements filed with both the Cook County Recorder of Deeds and the Delaware Department of State, John Hancock also has a lien and security interest in substantially all of Debtor's assets including, without limitation, fixtures on and improvements to the Mortgaged Property, machinery and equipment, rents, awards and other payments related to the Mortgaged Property, all leases and subleases (including guarantees), accounts receivable, and proceeds, profits and products of the foregoing.

4. Debtor's obligations to John Hancock arise under the Loan Documents.

5. Prepetition, Debtor defaulted on its obligations to John Hancock.

6. Other than the lien which arises by operation of law in favor of Cook County for unpaid real estate taxes, and the asserted security interest asserted by [illegible] in the retainer in the amount of $130,000 there are no other creditors claiming security interests in or liens against Debtor's assets or the Mortgaged Property.

7. On March 22, 2006, John Hancock filed its Verified Complaint to Foreclose Mortgage and For Other Relief ("Verified Complaint") against Debtor in the Circuit Court of Cook County, Illinois, Chancery Division, Case Number 2006 CH 05756 ("Mortgage Foreclosure Litigation").

8. On March 27, 2006, John Hancock filed its Motion to Appoint a Receiver of Non-Residential Real Property in the Mortgage Foreclosure Litigation.

9. The Mortgage Foreclosure Litigation was stayed when, on April 24, 2006 (the "Petition Date"), which was the day before the hearing on John Hancock's Motion to Appoint a Receiver, Debtor filed this Chapter 11 case.

10. On May 4, 2006, in response to the Debtor's Motion to Use Cash Collateral and John Hancock's Motion to Prohibit Debtor's Use of Cash Collateral, this Court entered its Order Authorizing Interim Use of Cash Collateral, Granting Certain Liens and Other Relief to John Hancock Life Insurance Company and Setting Final Hearing on the Use of Cash Collateral. Further use of Cash Collateral through June 9, 2006, was authorized by Order dated May 31, 2006. An order providing for the continued use of Cash Collateral through June 30, 2006, has been authorized by order dated June 13, 2006.

11. Upon ~~the Debtor's Motion~~ agreement of the parties in interest to Appoint Trustee, on May 18, 2006, this Court entered an order authorizing the appointment of Gus A. Paloian as Trustee.

12. Pursuant to the terms of the Loan Documents, which are valid, binding and enforceable, and Illinois law, John Hancock is entitled to payment of its claim in full and to foreclose the Mortgage.

13. Neither the Debtor nor the Trustee, nor any other party, has contested the nature, extent or validity of the Loan Documents, the amount of John Hancock's claim, or the extent or validity of John Hancock's security interests.

14. The Mortgaged Property is in need of significant capital for repairs, required physical improvements and maintenance.

15. Capital is needed to resolve physical conditions at the Mortgaged Property including, but not limited to, elevator maintenance and repairs, facade repairs, HVAC maintenance and repairs, and to install required water sprinklers as a fire safety system.

16. The property manager has received estimates to undertake capital projects to remedy these physical conditions, which estimates total between $6.6 and $9.3 million.



QBCHI\456188.2

17. At least $236,000 in capital is also required to effectuate tenant improvements and pay commissions related to those renewals.

18. The cash flow from the Mortgaged Property is not sufficient to pay for such maintenance, repairs, tenant improvements and commissions, nor has any party indicated an intention to provide capital for such items.

19. The Mortgaged Property has an occupancy level of approximately 50 percent.

20. It is uncertain whether existing tenants will remain in the Mortgaged Property; the leases of at least 21 tenants have expired, with such tenants occupying space in the Mortgaged Property as "holdover" tenants, with no binding agreement to remain in their spaces.

21. Debtor failed to deposit sufficient funds to cover the first installment of property tax for 2005, and John Hancock was required to cover the deficit.

22. In violation of the Mortgage, Debtor has failed to make any monthly tax escrow payments since February 1, 2006.

23. The second installment of 2005 property taxes are due in the fall of 2006, and are estimated to be at least $630,000 based on the amount of taxes owed for the second installment of 2004.

24. The estate will not have any funds with which to pay the second installment of 2005 taxes. Nor is the Trustee able to escrow against accrued and accruing 2006 real estate taxes.

25. It is estimated that by September, 2006, there will be due approximately $1.5 million in real estate taxes.

26. The unpaid real estate taxes constitute a lien against the Mortgaged Premises which primes John Hancock's Mortgage.

27. John Hancock's claim, as of the Petition Date, is $22,699,581.25 (the "Claim"), calculated as follows:

| | |
|---|---|
| Unpaid principal: | $21,500,000.00 |
| Accrued interest: | $ 341,760.42 |
| Default interest: | $ 476,583.84 |
| Outstanding Tax Escrow: | $ 308,522.34 |
| Reimbursement to Lender for 3/1/06 Tax Installment: | $ 12,718.87 |
| Late Charges: | $ 17,088.01 |
| Pre-Petition Attorneys' Fees & Costs: | $ 42,907.77 |
| | **$22,699,581.25** |

28. John Hancock has a valid, enforceable first-priority Mortgage and Assignment of Leases and Rents subject only to unpaid accrued and accruing real estate taxes, as well as a valid, enforceable, first-priority security interest in substantially all of Debtor's assets.

29. 11 U.S.C. § 363(k) grants to John Hancock the right to credit bid the full amount of its Claim.

30. Any potential purchaser of the Mortgaged Property would be required to pay an amount in excess of approximately $23.8 million, which constitutes the sum of the Claim plus the estimated $1.5 million in real estate taxes which would be due upon the closing of a sale of the Mortgaged Property in September, less the amount of the tax escrow reflected in the Claim.

31. The value of the Mortgaged Property is not more than $18.8 million.

32. There is no plan of reorganization on file.

33. No representative of the various equity ownership interests has expressed a concrete interest in presenting a new value plan of reorganization.

34. The Trustee has moved to dismiss this case.

35. The Trustee agrees that the issues between John Hancock and the Debtor can be resolved in the Mortgage Foreclosure Litigation.

binding

36. The Trustee has not received any offers to purchase the Mortgaged Property.

for a sum which would satisfy the claim of John Hancock and all accrued real estate taxes.

**Conclusions of Law**

**i) Jurisdiction and Venue**

1. This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§157 and 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This is a core proceeding under 28 U.S.C. §157(b)(2)(A), (G) and (O).

2. Venue is appropriate in this district pursuant to 28 U.S.C. §1408.

**ii) Burden of Proof**

3. Claimants bear the burden of proof on the issue of the Debtor's equity in the Mortgaged Property. 11 U.S.C. § 362(g)(1).

4. Parties opposing the relief sought by John Hancock bear the burden of proof on all other issues. 11 U.S.C. § 362(g)(2).

**iii) Cause Exists to Modify the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1).**

5. 11 U.S.C. § 362(d)(1) requires modification of the automatic stay "for cause, including the lack of adequate protection of an interest in property of a party in interest."

6. Debtor filed this Chapter 11 case on the day before the hearing on John Hancock's Motion to Appoint a Receiver in the Mortgage Foreclosure Litigation.

7. The captioned case is, in fact, a two-party dispute between the Debtor, which has conceded its defaults under the Loan Documents, and John Hancock.

8. Debtor has not indicated that it has any intention of filing a plan herein. Nor has any party committed to fund a plan.

9. The Trustee has represented that no party has expressed an interest in purchasing the Mortgaged Property for an amount greater than John Hancock's Claim and the accrued and

accruing real estate taxes, and that there is insufficient cash flow with which to pay operating expenses, taxes, and tenant and capital improvements.

10. Cause therefore exists to modify the automatic stay to enable John Hancock to complete the foreclosure of its Mortgage.

11. Further, "the 'interest in property' referred to in § 362(d)(1) includes the right of a secured creditor to have the security applied in payment of the debt upon completion of the reorganization; and that that interest is not adequately protected if the security is depreciating during the term of the stay". *United Savings Ass'n. of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370, 108 S.Ct. 626, 630 (1988).

12. John Hancock's security interest is declining in value.

13. John Hancock is entitled to adequate protection or relief from the automatic stay.

14. The Trustee cannot, under any circumstance, provide adequate protection of John Hancock's interest in the Mortgaged Property and other collateral for, among others, the following reasons:

(i) The occupancy rate at the Mortgaged Property is roughly 50%, and is likely to further deteriorate. The Debtor failed to renegotiate leases which terminated, and more than 25% of those tenants currently occupying the Mortgaged Property have no leases, and are occupying their spaces on a holdover basis. Without binding leases, there is no basis to assume that any of those tenants will remain in their spaces. The Trustee is unable to execute lease renewal agreements, since such agreements would require significant expenditures of cash to provide tenant improvements. Absent additional, significant financing, the estate does not have sufficient funds to pay for such improvements. The Trustee, therefore, cannot ensure any stability of occupancy level or establish that any rents which are expended will ever be

replenished. This in turn will adversely affect the value of the Mortgaged Property and John Hancock's interest therein, since such value is ~~directly dependent~~ based upon cash flow. *See In re 203 North LaSalle St. Ltd. Partnership*, 190 B.R. 567, 574-75 (Bankr. N.D. Ill. 1995), *rev'd on other grounds*, 526 U.S. 434 (1999).

(ii) There is insufficient cash flow from the Mortgaged Property to pay operating expenses and accrued and accruing real estate taxes. Accrued and accruing real estate taxes constitute a lien in favor of the Cook County Recorder which, by statute, primes John Hancock's Mortgage. The value of John Hancock's interest in the Mortgaged Property is, therefore, declining each day. *See In re Markos Gurnee Partnership*, 252 B.R. 712, 718 (Bankr. N.D. Ill. 1997).

(iii) Significant capital is required to remedy the maintenance issues and make capital improvements at the Mortgaged Property. The Mortgaged Property will continue to deteriorate absent significant cash infusions. There are no parties who are prepared to make the capital contributions necessary to repair and maintain the Mortgaged Premises.

15. Since the Trustee is unable to provide adequate protection of John Hancock's interests, John Hancock is entitled to relief from the automatic stay to pursue its non-bankruptcy remedies. *Id.* at 716. *See also In re James Wilson Assocs.*, 965 F.2d 160, 171 (7th Cir. 1992); *In re Addison Properties Ltd. Partnership*, 185 B.R. 766, 769-70 (Bankr. N.D. Ill. 1995).

**iv) Debtor does not have any equity in the Mortgaged Property, and the Mortgaged Property is not necessary for an effective reorganization.**

16. 11 U.S.C. § 362(d)(2) requires modification of the automatic stay of an act against property if the debtor does not have any equity in the property and the property "is not necessary to an effective reorganization".

17. The Court finds and concludes, based upon the evidence presented at trial, that Debtor has no equity in the Mortgaged Property and that the Mortgaged Property is not necessary to an effective reorganization, and therefore cause exists to modify the automatic stay.

18. The Court finds that, as of the filing of the instant petition, John Hancock's Claim was in the amount of $22,699,581.25. In addition, unpaid and accrued real estate taxes constitute a lien against the Mortgaged Property which primes that of John Hancock. It is estimated that approximately $630,000 will be due in the fall of 2002 for the second installment of 2005 taxes. Further, if the Mortgaged Property were sold in September, accrued and accruing real estate taxes will total approximately $1.5 million.

19. The evidence has established that the value of the Mortgaged Property is not more than $18.8 million, and, therefore, the estate has no equity therein. *See In re Highland Park Associates Limited Partnership*, 130 B.R. 55, 57 (Bankr. N.D. Ill. 1991) ("'equity' refers to the difference between the value of the property and all encumbrances upon it" (citation omitted).) *Cf. In re Vitreous Steel Products Company*, 911 F. 2d 1223, 1232 (7th Cir. 1990) (court compared value of real estate to creditor's mortgage, acknowledging, however, that unpaid real estate taxes constituted a priority lien).

20. Further, §362(d)(2) requires "not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*". *United Savings Ass'n. of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 376-77, 108 S. Ct. 626, 633 (1988) (emphasis in original). Even within the debtor's exclusive period for filing a plan, "lack of any realistic prospect of effective reorganization will require §362(d)(2) relief. " *Id., and cases cited therein.* "[A]t a minimum the debtor must show that (1) it is proceeding to propose a plan of

reorganization, (2) the proposed or contemplated plan has a realistic chance of being confirmed and (3) the proposed or contemplated plan is not patently unconfirmable". *In re Robinson*, No. 00 B 02122, 2000 WL 1800604, at *7 (Bankr. N.D. Ill. Dec. 7, 2000).

21. There is no plan of reorganization on file, and the Trustee has indicated that he does not intend to file one. Further, no representative of the various equity ownership interests or any other entity has expressed a concrete interest in presenting a new value plan of reorganization.

22. The only realistic possibility is a sale of the Mortgaged Property, which the Trustee will be unable to effectuate absent John Hancock's consent. *See* 11 U.S.C. § 363(f). As 11 U.S.C. § 363(k) authorizes John Hancock to credit bid the full amount of its Claim, the Trustee would have to establish that there is a realistic chance that the Mortgaged Property will sell for a price in excess of $23.8 million and that he can provide adequate protection to John Hancock through the closing of a sale. The Trustee is unable to do either. at this time.

23. Accordingly, modification of the automatic stay to enable John Hancock to complete the Foreclosure Litigation is required. *See Robinson*, 2000 WL 1800604, at *8 ("there is serious doubt that the plan has a realistic chance of being confirmed"); *In re Cadwell's Corners Partnership*, 174 B.R. 744 (Bankr. N.D. Ill. 1994)(court granted motion to modify automatic stay two months post-petition since debtor's proposals for reorganization were too speculative, including inability to fund its proposals); *Highland Park Associates*, 130 B.R. 55 (stay modified as reorganization proposal too speculative).

v) **Objections Overruled**

24. All objections raised by any party to the Motion of John Hancock Life Insurance Company to Modify the Automatic Stay to Proceed with Foreclosure, to the extent the same have not been waived, abandoned, or withdrawn, are hereby overruled.



Respectfully Submitted,

JOHN HANCOCK LIFE INSURANCE COMPANY

By: /s/ Christopher Combest
One of Its Attorneys

Faye B. Feinstein (ARDC No. 06186627)
Leonard S. Shifflett (ARDC No. 02587432)
Christopher Combest (ARDC No. 06224701)
Benjamin L. Schneider (ARDC No. 06285136)
Quarles & Brady LLP
500 West Madison Street, Suite 3700
Chicago, IL 60661-2589
Telephone: (312) 715-5000

Dated:
June 20, 2006

Enter:

Honorable Susan Pierson Sonderby
United States Bankruptcy Judge