**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 06-B-04563-SPS |
| Eleven South LaSalle Associates, L.L.C., | ) | |
| a Delaware limited liability company, | ) | Hon. Susan Pierson Sonderby |
| | ) | |
| Debtor. | ) | Hearing Date:  July 19, 2011 |
| | ) | Hearing Time: 10:30 a.m. |

**COVER SHEET FOR FOURTH AND FINAL APPLICATION OF SEYFARTH
SHAW LLP FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES AS
COUNSEL TO CHAPTER 7 TRUSTEE GUS A. PALOIAN**

Name of Applicant:                             SEYFARTH SHAW LLP

Authorized to Provide
Professional Services to:                     Gus A. Paloian, Chapter 7 Trustee

Date of Order Authorizing
Employment:                                        February 26, 2008, retroactive to July 26, 2006

Period for which Compensation
and Reimbursement is Sought:             July 1, 2009, through the close of the case

Amount of Final Fees Sought:             $26,061.00

Amount of Final Expense
Reimbursement Sought:                        $258.70

This is an:    X   Final          ____   Interim Application.

Prior Applications:    The below table provides a summary of the disposition of Seyfarth's prior
interim fee applications in this case:

| SEYFARTH'S PRIOR INTERIM FEE APPLICATIONS IN CHAPTER 7 CASE[1] | | | | | |
|---|---|---|---|---|---|
| Filing Date & Docket Number(s) | Interim Period Covered | Total Fees Requested & [Allowed] | Total Expenses Requested & [Allowed] | Aggregate Allowed Fees & Expenses | Fees & Expenses Paid to Date |
| 11/20/07 [237] | 6/30/06 to 9/30/07 | $106,217.50 [$102,896.00] | $3,960.34 [$2,680.26] | $105,576.26 | $105,576.26 |
| 12/18/08 [283] | 10/1/07 to 6/30/08 | $50,264.00 [49,581.50] | $2,731.57 [2,731.57] | $52,313.07 | $52,313.07 |
| 8/24/09 [315] | 7/1/08 to 6/30/09 | $24,529.00 [24,490.50] | $799.36 [$799.36] | $25,289.86 | $25,289.86 |
| | | | TOTAL | **$183,179.19** | **$183,179.19** |

Dated:  June 14, 2011

Respectfully submitted,

SEYFARTH SHAW LLP

By: /s/ Gus A. Paloian

Gus A. Paloian (06188186)
James B. Sowka (6291998)
M. Ryan Pinkston (6297427)
SEYFARTH SHAW LLP
131 South Dearborn Street, Suite 2400
Chicago, Illinois 60603-5577
Telephone:  (312) 460-5000
Fax:  (312) 460-7000

---

[1] The above captioned case was converted from a Chapter 11 to a Chapter 7 proceeding on July 26, 2006. Mr. Paloian was appointed as a Chapter 11 trustee in this case on May 18, 2006.  *See* Dkt. No. 68. Following conversion of the case on July 26, 2006, Mr. Paloian was appointed as the Chapter 7 trustee. *See* Dkt. No. 139.  In addition to the amounts set forth herein, Seyfarth has been awarded $80,130.00 in fees and $619.99 in expenses in connection with services provided to Mr. Paloian in his capacity as the Chapter 11 trustee.  *See* Dkt. Nos. 152 and 253.

13367286v.1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 06-B-04563-SPS |
| Eleven South LaSalle Associates, L.L.C., | ) | |
| a Delaware limited liability company, | ) | Hon. Susan Pierson Sonderby |
| | ) | |
| Debtor. | ) | Hearing Date:  July 19, 2011 |
| | ) | Hearing Time: 10:30 a.m. |

**FOURTH AND FINAL APPLICATION OF SEYFARTH SHAW LLP**
**FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES AS COUNSEL**
**TO CHAPTER 7 TRUSTEE GUS A. PALOIAN**

Pursuant to 11 U.S.C. §§ 330, 331, 503(a) and (b), and 507(a)(2), and Federal Rule of

Bankruptcy Procedure 2016, Seyfarth Shaw LLP ("Seyfarth") hereby files its Fourth and Final

Application for Compensation and Reimbursement of Expenses as Counsel to Chapter 7 Trustee

Gus A. Paloian (the "Application") for legal services rendered and expenses incurred as counsel

to Chapter 7 Trustee Gus A. Paloian (the "Trustee") during the period of time commencing on

July 1, 2009, through the close of the case (the "Application Period").  In support of this

Application, Seyfarth respectfully states as follows:

## I.  INTRODUCTION

1.     Seyfarth makes this Application pursuant to:  (i) Sections 330, 331, 503(a) and

(b), and 507(a)(2) of title 11 of the United States Code, 11 U.S.C. §§ 101 through 1330, as

amended (the "Bankruptcy Code");  (ii) Rule 2016 of the Federal Rules (the "Rules") of

Bankruptcy Procedure;  (iii) certain applicable provisions of the Guidelines for Reviewing

Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330, as

adopted by the Office of the United States Trustee;  (iv) Rule 5082-1 of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Northern District of Illinois;  (v) that

certain Order of the Court authorizing Seyfarth's retention as counsel to the Trustee retroactive to July 26, 2006;  (vi) this Court's Standing Order Nos. 2, 5, and 8;  and (vii) other applicable case law discussed herein.

2.     In making this Application, Seyfarth respectfully seeks the entry of an order: (i) allowing Seyfarth final compensation in the amount of $26,061.00 for legal services rendered to the Trustee during the Application Period;  (ii) allowing Seyfarth final reimbursement of expenses in the amount of $258.70 for costs incurred on behalf of the Trustee during the Application Period;  (iii) allowing such final compensation and reimbursement of expenses to Seyfarth as an administrative expense of the bankruptcy estate (the "Estate") of the above-captioned debtor;  (iv) authorizing payment to Seyfarth of such final compensation and reimbursement as the Court allows from Estate funds on hand as part of the Trustee's final distribution in this case; and (v) allowing all amounts previously awarded and paid to Seyfarth as interim compensation and expense reimbursement to be deemed final, all as more fully discussed herein.

## II.  **JURISDICTION**

3.     The Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

4.     This matter is before the Court pursuant to 28 U.S.C. § 157 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.

5.     Venue of the above-captioned case (the "Case") and this Application is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

6.     Consideration of this Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (2)(A), (M), and/or (O).

2

7.      The predicates for the relief requested herein are Sections 330, 331, 503(a) and

(b), and 507(a)(2), as supported by Rule 2016(a) and Local Rule 5082-1.

### III.  <u>BACKGROUND</u>

8.      On April 24, 2006, the Debtor filed its voluntary petition for relief under Chapter

11 of the United States Bankruptcy Code, thereby commencing the Case.

9.      On May 8, 2006, the Debtor moved for the appointment of a Chapter 11 Trustee,

and on May 9, 2006, Mouton Limited Partnership moved for the same.  On May 10, 2006, these

and other parties—including John Hancock Life Insurance Company, the Debtor's secured

lender —consented to the entry of an agreed order directing the Office of the United States

Trustee to Appoint a Chapter 11 Trustee (the "<u>Agreed Appointment Order</u>").

10.     On May 11, 2006, the Court entered that certain Agreed Appointment Order.

11.     On or about that date, the United States Trustee notified Gus A. Paloian of his

appointment as the Chapter 11 Trustee in the Case.  The Court approved said appointment on

May 18, 2006.

12.     On June 26, 2006, the Court approved Seyfarth's retention as counsel to the

Chapter 11 Trustee, retroactive to May 15, 2006.

13.     On August 30, 2006, and effective as of July 26, 2006, the Case was converted to

one under Chapter 7 and Gus A. Paloian was appointed Chapter 7 Trustee.

14.     On February 26, 2008, this Court entered an order authorizing the retention of

Seyfarth, retroactive to July 26, 2006, as counsel to the Chapter 7 Trustee ("Seyfarth Retention

Order").

15.     In accordance with Section 504(b)(1) of the Bankruptcy Code and Rule 2016,

Seyfarth has received no promises for payment for services rendered or to be rendered in any

capacity whatsoever in connection with the Case, other than specifically provided for in the

3

Seyfarth Retention Order.  Additionally, other than as permitted by Section 504(b)(1) of the

Bankruptcy Code and Rule 2016(a), no agreement or understanding exists between Seyfarth and

any other entity for a division of compensation and reimbursement of expenses received or to be

received for services rendered in or in connection with the Case.

## IV.  SUMMARY OF SERVICES RENDERED AND COSTS ADVANCED BY SEYFARTH

### A.  Overview and Prior Interim Fee Applications

16.     This Application is Seyfarth's fourth and final fee application as counsel for the

Chapter 7 Trustee in the Case.

17.     Pursuant to its First Interim Application [Docket No. 237] and this Court's order

dated February 28, 2008  [Docket No. 252], Seyfarth was allowed and paid interim

compensation and expense reimbursement in the amount of $105,576.26; pursuant to its Second

Interim Application  [Docket No. 283] and the Court's order dated December 18, 2008 [Docket

No. 283], Seyfarth was allowed and paid interim compensation and expense reimbursement in

the amount of $52,313.07; and pursuant to its Third Interim Application  [Docket No. 315] and

the Court's order dated September 23, 2008 [Docket No. 318], Seyfarth was allowed and paid

interim compensation and expense reimbursement in the amount of $25,289.86.

### B.  Services Rendered During Application Period

18.     During the Application Period, Seyfarth has:  (i) provided legal services to the

Trustee in the amount of $26,061.00[2] (the "Incurred Fees"), and (ii) advanced costs in the

amount of $258.70 (the "Incurred Expenses") in connection with the legal services that it has

provided to the Trustee.

---

[2] Within the Application, Seyfarth has included time 4.50 hours of time, worth a total value of $815.50, for services that were rendered before the Application Period but were not requested within Seyfarth's prior interim fee applications.

4

19.    The following table consists of a breakdown of the amount of Incurred Fees by each Seyfarth professional, including each such professional's:  (i) title and location, (ii) primary practice area, (iii) hourly rate, (iv) total hours expended in providing legal services in the Case, and (v) the value attributable to such legal services:

| PROFESSIONAL, TITLE AND LOCATION | 2009 HOURLY RATE | 2010 HOURLY RATE | 2011 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian PARTNER–CHICAGO | $540.00 | $555.00 | N/A | 15.00 | $8,124.00 |
| Sara Lorber ASSOCIATE–CHICAGO | $405.00 | N/A | N/A | 0.90 | $364.50 |
| James Sowka ASSOCIATE–CHICAGO | $310.00 | $325.00 | $375.00 | 4.90 | $1,571.00 |
| M. Ryan Pinkston ASSOCIATE–CHICAGO | N/A | $295.00 | $330.00 | 4.50 | $1,373.00 |
| Jennifer McManus PARALEGAL–CHICAGO | $230.00 | $235.00 | $240.00 | 41.40 | $9,654.50 |
| Ricki Knapp-Podorovsky PARALEGAL–CHICAGO | $215.00 | $220.00 | $230.00 | 8.50 | $1,905.00 |
| Nina Bouchard CASE/LEGAL ASST-CHI | $105.00 | $100.00 | N/A | 28.10 | $3,043.50 |
| Alice Shepro CASE ASSISTANT-CHI | N/A | N/A | $85.00 | 0.30 | $25.50 |
| TOTAL | | | | 103.60 | $26,061.00 |

20.    Biographies for certain attorneys listed above, describing their qualifications and areas of expertise was submitted to the Court as an exhibit to Seyfarth's prior interim fee application [Docket No. 237], at Exhibit 1 and are incorporated herein by reference, or are attached hereto as **Exhibit 1**.

21.    During the Application Period, Seyfarth made every reasonable effort to have the services that it rendered to the Trustee performed by those qualified professionals charging the

5

13367286v.1

lowest hourly rates consistent with the level of service, experience, and efficiency required of a given task.

22.    All of the compensation for which Seyfarth requests allowance and payment, and all of the expenses for which Seyfarth requests reimbursement, in this Application relate to the discharge of Seyfarth services, as requested by the Trustee, during the Application Period.

23.    Seyfarth respectfully submits that its services to the Trustee during the Application Period have, in all respects, been reasonable, necessary, and beneficial to the Estate, as further discussed herein.

### C.  Benefit of Services to Estate

24.    Throughout its retention, Seyfarth provided necessary legal services to the Trustee that directly benefited the Estate.  Seyfarth's services have enabled the Trustee to collect in excess of $1,330,000.00 for the Estate.  In addition, Seyfarth has obtained a default judgment against the Debtor's former president, and in favor of the Estate, in the approximate amount of $210,000.00 (the "Toberman Judgment")[3].  Excluding any potential additional distribution to creditors on account of the Toberman Judgment, general unsecured creditors are expected to receive a distribution equal to more than 50% of allowed claims.

### D.  Time and Expense Records

25.    Seyfarth maintains written records of the time expended by its professionals. These time records are maintained:  (i) contemporaneously with the provision of services by each Seyfarth professional, and (ii) separately from those of the Trustee, in accordance with this

---

[3] Despite significant efforts to enforce the Toberman Judgment, the Estate has been unable to recover any proceeds on account of the judgment.  Scott Toberman currently is in prison. Incorporated within the Trustee's Final Report, filed concurrently with this Application, is a request by the Trustee, pursuant to Section 554(c) of the Bankruptcy Code, for the entry of an Order determining that the Estate's interest in the Toberman Judgment is not abandoned at the closing of the case.

6

Court's Standing Order No. 5.  Seyfarth also maintains records of all of its actual and necessary out-of-pocket expenses incurred in rendering services to the Trustee.

### E.  **Breakdown of Fees by Category of Services Rendered**

26.     For the Court's convenience, Seyfarth has categorized the legal services that it provided the Trustee during the Application Period, as follows:  (i) Case Administration, (ii) Claims Administration and Analysis, (iii) Enforcement and Collection of Judgments; (iv) Creditor Inquiries and Communications; and (v) Fee Applications.  Each category of services is more fully discussed below. A detailed itemization of the time records for each category are grouped and attached hereto as **Exhibit 2**.

## Case Administration (4.00 hours valued at $854.00)

27.     During the Application Period, Seyfarth expended 4.00 hours, worth a value of $854.00, on behalf of the Trustee on matters of Case Administration, including:

A.      Preparation of Trustee's Motion to Employ Accountants;

B.      Advising the Trustee as to the proposed reservation of an asset at closing pursuant to Bankruptcy Code 554(c); and

C.      Otherwise advising and representing the Trustee as to general case administration matters.

28.     A breakdown of the professional services in this category is as follows:

| PROFESSIONAL, TITLE AND LOCATION | 2009 HOURLY RATE | 2010 HOURLY RATE | 2011 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| M. Ryan Pinkston ASSOCIATE—CHICAGO | N/A | N/A | $330.00 | 0.30 | $99.00 |
| James Sowka ASSOCIATE–CHICAGO | $310.00 | N/A | N/A | 0.20 | $62.00 |
| Jennifer McManus PARALEGAL–CHICAGO | $230.00 | $235.00 | N/A | 2.40 | $552.50 |

13367286v.1

| PROFESSIONAL, TITLE AND LOCATION | 2009 HOURLY RATE | 2010 HOURLY RATE | 2011 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Ricki Knapp-Podorovsky PARALEGAL–CHICAGO | N/A | N/A | $230.00 | 0.20 | $46.00 |
| Nina Bouchard PARALEGAL-CHI | $105.00 | N/A | N/A | 0.90 | $94.50 |
| **TOTAL** | | | | **4.00** | **$854.00** |

### Claims Administration and Analysis (60.50 hours valued at $14,937.50)

29.     During the Application Period, Seyfarth expended 60.50 hours, worth a value of $14,937.50, on behalf of the Trustee in Claims Administration and Analysis, including:

A.     Claim investigation and analysis of all claims filed in the case for the purpose of identifying invalid claims;

B.     Communications and negotiations with multiple creditors for the resolution of the Trustee's objections to invalidly filed claims; preparation of agreed orders and motions for the entry of those agreed orders to resolve certain claims;

C.     Review and analysis of documents submitted by various creditors in support of the claims filed; and

D.     Advise to the Trustee as to the proposed interim distribution to creditors.

30.     As a result of these efforts, invalid claims in excess of $40,000.00 were disallowed, an undetermined claim was withdrawn, and other invalid claims were allowed in validly determined amounts and priority, thereby ensuring the complete and proper distribution to creditors of the Estate.

31.     A breakdown of the professional services in this category is as follows:

| PROFESSIONAL, TITLE AND LOCATION | 2009 HOURLY RATE | 2010 HOURLY RATE | 2011 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian PARTNER–CHICAGO | $540.00 | $555.00 | N/A | 12.50 | $6,766.50 |
| James B. Sowka ASSOCIATE–CHICAGO | $310.00 | $325.00 | $375.00 | 0.40 | $138.50 |
| M. Ryan Pinkston ASSOCIATE–CHICAGO | N/A | $295.00 | N/A | 0.60 | $177.00 |
| Jennifer McManus PARALEGAL–CHICAGO | $230.00 $220.00 ('08) | $235.00 | $245.00 | 19.20 | $4,466.00 |
| Ricki Knapp-Podorovsky PARALEGAL–CHICAGO | N/A | $220.00 | $230.00 | 3.10 | $709.00 |
| Nina Bouchard CASE/LEGAL ASST-CHI | $105.00 | $110.00 | N/A | 24.40 | $2,655.00 |
| Alice Shepro CASE ASSISTANT-CHI | N/A | N/A | $85.00 | 0.30 | $25.50 |
| **TOTAL** | | | | **60.50** | **$14,937.50** |

**Enforcement and Collection of Judgments (5.00 hours valued at $1,467.00)**

32.     During the Application Period, Seyfarth expended 5.00 hours, worth a value of $1,467.00, on behalf of the Trustee in Enforcement and Collection of the Toberman Judgment. In connection with these efforts, Seyfarth communicated with the Trustee's special collection counsel, prepared documents necessary to record and enforce the judgment, and investigated the possibility of selling the Estate's interest in the Judgment to a third party.

33.     A breakdown of the professional services in this category is as follows:

| PROFESSIONAL, TITLE AND LOCATION | 2009 HOURLY RATE | 2010 HOURLY RATE | 2011 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian PARTNER–CHICAGO | $540.00 | $555.00 | N/A | 1.50 | $817.50 |
| Sara Lorber ASSOCIATE-CHICAGO | $405.00 | N/A | N/A | 0.10 | $40.50 |

9

| PROFESSIONAL, TITLE AND LOCATION | 2009 HOURLY RATE | 2010 HOURLY RATE | 2011 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| James B. Sowka ASSOCIATE–CHICAGO | N/A | $325.00 | N/A | 0.20 | $65.00 |
| M. Ryan Pinkston ASSOCIATE–CHICAGO | N/A | N/A | $330.00 | 0.20 | $66.00 |
| Jennifer McManus PARALEGAL–CHICAGO | $230.00 | $235.00 | N/A | 1.30 | $299.50 |
| Nina Bouchard CASE/LEGAL ASST-CHI | $105.00 | N/A | N/A | 1.70 | $178.50 |
| TOTAL | | | | 5.00 | $1,467.00 |

**Creditor Inquiries and Communications (0.90 hours valued at $211.50)**

34.    During the Application Period, Seyfarth expended 0.90 hours, worth a value of $211.50, as requested by the Trustee in connection with the response and communication with multiple creditors regarding case status, proposed distribution, and other general concerns regarding the administration of this case.

35.    A breakdown of the professional services in this category is as follows:

| PROFESSIONAL, TITLE AND LOCATION | 2009 HOURLY RATE | 2010 HOURLY RATE | 2011 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Jennifer McManus PARALEGAL–CHICAGO | N/A | $235.00 | N/A | 0.90 | $211.50 |
| TOTAL | | | | 0.90 | $211.50 |

**Fee Applications (23.30 hours valued at $5,665.50)**

36.    During the Application Period, Seyfarth expended 23.30 hours, worth a value of $5,665.50, in preparing Seyfarth's third interim fee application [Docket No. 315], the Trustee's accountants' fee application, and this Application. Of the total time included within this

10

category, Seyfarth expended 12.10 hours, worth a value of $3,019.50, on the preparation of the

prior fee application, .40 hours, worth a value of 92.00, on the Trustee's accountants' fee

application, and the remaining 10.80 hours of time within this category, worth a value of

$2,554.00, on the preparation of this Application.

37.     A breakdown of the professional services in this category is as follows:

| PROFESSIONAL, TITLE AND LOCATION | 2009 HOURLY RATE | 2010 HOURLY RATE | 2011 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian PARTNER–CHICAGO | $540.00 | N/A | N/A | 1.00 | $540.00 |
| James Sowka ASSOCIATE–CHICAGO | $310.00 | N/A | N/A | 0.80 | $248.00 |
| Jennifer McManus PARALEGAL–CHICAGO | $230.00 | $235.00 | $240.00 | 15.40 | $3,612.00 |
| Ricki Knapp-Podorovsky PARALEGAL–CHICAGO | N/A | N/A | $230.00 | 5.00 | $1,150.00 |
| Katherine (Nina) Bouchard PARALEGAL—CHICAGO | $105.00 | N/A | N/A | 1.10 | $115.50 |
| **TOTAL** | | | | **23.30** | **$5,665.50** |

## F.  Breakdown of Expenses

38.     Seyfarth has advanced $258.70 in Incurred Expenses on behalf of the Trustee in

connection with the legal services provided to the Trustee during the Application Period.

Pursuant to Local Rule 5082-1(B)(1)(g), the Incurred Expenses represent the actual cost to

Seyfarth of the Incurred Expenses and no additional charges have been added to their actual cost.

A detailed listing of the Incurred Expenses is attached hereto as **Exhibit 3**.  In this respect,

Seyfarth voluntarily reduces photocopy costs to $0.10 per page, in accordance with this Court's

Standing Order No. 8.

13367286v.1

## V.  RELIEF REQUESTED

39.     Seyfarth respectfully requests that the Court:  (i) allow Seyfarth on a final basis

the Incurred Fees of $26,061.00 as reasonable compensation for actual and necessary legal

services provided to, and the Incurred Expenses of $258.70 as reimbursement for actual and

necessary costs incurred on behalf of, the Trustee during the Application Period ;  (ii) allow the

Incurred Fees and Expenses as an administrative expense of the Estate;  and (iii) authorize

payment of the Incurred Fees and Expenses to Seyfarth from the funds held on account in the

Estate.

40.     Additionally, Seyfarth requests that all amounts previously allowed and paid as

interim compensation and expense reimbursement, pursuant to the First Interim Application,

Second Interim Application and Third Interim Application (collectively, the "Interim

Applications"), shall be deemed final allowances.

41.     A draft Order granting the relief requested herein is attached hereto for the

Court's consideration.

## VI.  BASIS FOR REQUESTED RELIEF

### A.  Compensation Standards and Analysis

42.     Under Section 330(a)(1)(A), the Court may award a professional person

employed under Section 327 "reasonable compensation for actual, necessary services

rendered[.]" 11 U.S.C. § 330(a)(1)(A).

43.     With respect to determining a reasonable hourly rate, "Congress rejected the

'spirit of economy' notion in favor of a market approach to determining fees" in enacting Section

330(a)(1), and thereby "'expressed its intent that compensation in bankruptcy matters be

commensurate with the fees awarded for comparable services in non-bankruptcy cases.'"  In re

Farley, Inc., 156 B.R. 203, 210 (Bankr. N.D. Ill. 1993) (Schmetterer, J.) (quoting In re UNR

Indus., Inc., 986 F.2d 207, 208-09 (7th Cir. 1993)); see In re McNichols, 258 B.R. 892, 905

(Bankr. N.D. Ill. 2001) (Squires, J.).

44.    In this connection, and as the Seventh Circuit held in Gusman v. Unisys Corp.,

986 F.2d 1146 (7th Cir. 1993):

> The best measure of an attorney's time is what that attorney could
> earn from paying clients. For a busy attorney, this is the standard
> hourly rate. If he were not [working for] this [client], the lawyer
> could sell the same time to someone else. That other person's
> willingness to pay establishes the market's valuation of the
> attorney's services.

Id. at 1150; see In re Palladino, 267 B.R. 825, 831 (Bankr. N.D. Ill. 2001) (Squires, J.); see also

Pressley v. Haeger, 977 F.2d 295, 299 (7th Cir. 1992) ("It is not the function of judges in fee

litigation to determine the equivalent of the medieval just price. It is to determine what the

lawyer would receive if he were selling his services in the market rather than being paid by court

order.") (internal quotation marks and citation omitted).

45.    Here, where Seyfarth bills the vast majority of its time at a set rate for paying

clients and spends only a very small percentage of time on cases covered by fee-shifting statutes,

"there is a strong presumption that such counsel could have billed out remaining time at the rate

normally charged." In re Farley, Inc., 156 B.R. at 211.

46.    Additionally, under generally accepted standards, if the services of an attorney

employed under Section 327 are reasonably likely to benefit the debtor's estate, they should be

compensable. See In re Pro-Snax Distributors, Inc., 157 F.3d 414, 421 (5th Cir. 1998); In re

Ames Dep't Stores, Inc., 76 F.3d 66, 71 (2d Cir. 1996); 2 Lawrence P. King, Collier on

Bankruptcy ¶ 330.04 at 330-43 (15th ed. rev. 1999); cf. 11 U.S.C. § 330(a)(4)(A)(ii)(I) (2006).

The determination of benefit to the Estate is not constrained to a dollar-for-dollar measurement,

such that each dollar's worth of legal services must bring a cash dollar into the Estate in order to

justify equivalent compensation to counsel. See In re Lifschultz Fast Freight, Inc., 140 B.R. 482,

13

488 (Bankr. N.D. Ill. 1992) (Barliant).  Instead, other factors, such as "whether the services

rendered promoted the bankruptcy process or administration of the estate in accordance with the

practice and procedures provided under the Bankruptcy Code and Rules for the orderly and

prompt disposition of bankruptcy cases and related adversary proceedings," also support awards

of compensation.  In re Spanjer Bros., Inc., 191 B.R. 738, 748 (Bankr. N.D. Ill. 1996) (Squires,

J.).

47.     As previously stated, the fees for which Seyfarth requests allowance and payment

of compensation relate to the Application Period, and were rendered in connection with this Case

and in the discharge of Seyfarth's professional responsibilities as counsel to the Trustee during

that time.  Seyfarth respectfully submits that the legal services it rendered during the Application

Period have, in all respects, been reasonable, necessary, and beneficial to the Estate.  In this

connection, these services were performed within a reasonable amount of time commensurate

with the complexity, importance, and nature of the matters which they concerned.  Further, they

promoted the bankruptcy process and the administration of the Estate, in accordance with the

Bankruptcy Code and Rules.

48.     For purposes of this Application, Seyfarth has computed its fees on the basis of its

regular hourly rates applicable to the performance of legal services unrelated to this Case at the

time that such services were rendered.

49.     During the Application Period, Seyfarth's standard hourly billing rates for

professionals providing services in this Case ranged from $295.00 to $555.00 for attorneys, and

from $85.00 to $240.00 for paralegals and para-professionals.  Based upon all of the foregoing,

Seyfarth respectfully submits that the fair and reasonable value of the legal services that it

rendered during the Application Period is $26,061.00.

50.     In all these respects, the compensation which Seyfarth has requested for rendering legal services during the Application Period is reasonable based upon the customary compensation charged by comparably skilled practitioners in non-bankruptcy cases.  It is the same compensation, or less, which Seyfarth would have received for providing legal services to its non-bankruptcy clients, and thus represents its lost opportunity costs because Seyfarth's acceptance of employment by the Trustee in this Case precluded other employment that Seyfarth would otherwise have obtained.

51.     In rendering legal services to the Trustee, and in making this Application, Seyfarth respectfully submits that it has exercised its good faith billing judgment, and has not sought compensation for "excessive, redundant, or otherwise unnecessary" time.  Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939-40, 76 L. Ed. 2d 40 (1983).

## B.  Reimbursement Standard and Analysis

52.     With respect to reimbursing expenses, the Court may award a professional person "reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1)(B).

53.     "An expense is necessary if it was incurred because it was required to accomplish the proper representation of the client."  In re Spanjer Bros., Inc., 191 B.R. at 749;  see In re Wildman, 72 B.R. at 731.

54.     In this connection, Seyfarth has requested reimbursement only for actual and necessary expenses incurred on the Trustee's behalf.  Seyfarth respectfully submits that these expenses were incurred because they were required to accomplish the proper representation of the Trustee and the furtherance of the Estate's interests in the Case.  As previously indicated, Seyfarth voluntarily reduced and limited its costs for photocopy expenses.

55.     Seyfarth submits that the Incurred Expenses are reimbursable and do not constitute "overhead," which the Court discussed and described, as follows:

15

Expenses which are overhead are not compensable because they are not built into the normal hourly rate charged by the billing professional. <u>Convent Guardian</u>, 103 Bankr. at 939; <u>Wildman</u>, 72 Bankr. at 731. Overhead expenses include "all continuous administrative or general costs or expenses incident to the operation of the firm which cannot be attributed to a particular client or cost." <u>In re Thacker</u>, 48 Bankr. 161, 164 (Bankr. N.D. Ill. 1985) (quoting <u>Jensen-Farley Pictures</u>, 47 Bankr. at 584)[4].

56.    In contrast, Seyfarth charges for its out-of-pocket expenses only, including the Incurred Expenses, to the particular clients who use them—in this instance, the Estate. As previously discussed, the Incurred Expenses included herein are neither taken into consideration in determining, nor built as "overhead" into, Seyfarth's hourly rates.

57.    Such "user fee" expense billing closely adheres to the Seventh Circuit's market rate billing approach. In this respect, the Seventh Circuit's market approach to compensation extends equally to the reimbursement of expenses, including those for online research. <u>See In re Hunt's Health Care, Inc.</u>, 161 B.R. 971, 978 (Bankr. N.D. Ind. 1993); <u>accord In re Hillsborough Holdings Corp.</u>, 127 F.3d at 1403-04 ("[I]f the cost of comparable services is a relevant factor in setting compensation for services under [330](a)(1), it would logically seem also to be a relevant factor in determining what categories to treat as reimbursable expenses under (a)(2).").

58.    For example, in <u>Continental Illinois Securities</u>, <u>supra</u>, the Seventh Circuit reversed, and markedly criticized, the district court for disallowing online research expenses:

> The judge refused to allow the lawyers to bill any of their out-of-pocket expenses of using a computerized legal research service (LEXIS). He thought those expenses should be part of the lawyers' overhead. This was another clear error.

---

[4] <u>In re GSB Liquidating Corp.</u>, 1995 Bankr. LEXIS 1245, at *41 (Bankr. N.D. Ill. Aug. 21, 1995) (Squires, J.); <u>see In re Adventist Living Ctrs., Inc.</u>, 137 B.R. 701, 719 (Bankr. N.D. Ill. 1991) (Sonderby, J.) ("Expenses which are overhead and which are included in the hourly rate are not compensable."); <u>see also</u> 2 Lawrence P. King, <u>Collier on Bankruptcy</u> ¶ 330.05 at 3-330 (15th ed. rev. LEXIS 2006) ("Nonreimbursable overhead has been defined as regular administrative and general expenses incident to the operation of a business that cannot be attributed to a particular client or cost."); <u>see, e.g.</u>, <u>Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.)</u>, 127 F.3d 1398, 1402 (11th Cir. 1997) ("We accept that true 'overhead' costs—the ordinary operating costs of a firm, *such as rent, heat, and the like*, that cannot readily be attributed to a particular case—are not separately compensable as reimbursable expenses.") (emphasis added)

If computerized research expenses were customarily treated in this fashion, lawyers' hourly rates would be even higher than they are, requiring an adjustment in the lodestar. *But the more important point is that the market—the paying, arms' length market—reimburses lawyers' LEXIS and WESTLAW expenses, just as it reimburses their paralegal expenses, rather than requiring that these items be folded into overhead.* Markets know market values better than judges do. And as with paralegals, so with computerized research: if reimbursement at market rates is disallowed, the effect will be to induce lawyers to substitute their own, more expensive time for that of the paralegal or the computer, 962 F.2d at 570 (emphasis added); accord Harman v. Lyphomed, Inc., 945 F.2d 969, 976 (7th Cir. 1991) ("The attorneys also claim that the court erred in excluding the roughly $10,000 expended in computer-assisted research. The court felt that the expense 'is part of the amount allowed for attorney's fees.' *We must reverse the district court here.* Computer-assisted research fees—so long as reasonably incurred—in theory reduce the number of attorney hours otherwise needed for (presumably) more time-consuming manual research and are therefore compensable[. . . . as] expenses[.]") (emphasis added).

59.     The Seventh Circuit has remained consistent on this subject and has repeatedly required attorney reimbursement for computerized legal research charges. See, e.g., Uniroyal Goodrich Tire Co. v. Mutual Trading Corp., 63 F.3d 516, 526 (7th Cir. 1995) ("Before we turn our attention to the award of costs, we consider MTC's request that the costs of computerized legal research be subtracted from the award. *MTC claims that these expenses are better characterized as overhead in the same way that maintenance of a law firm library is. We reject this claim.*") (emphasis added), cert. denied, 516 U.S. 1115, 116 S. Ct. 916, 133 L. Ed. 2d 846 (1996).

60.     Accordingly, lower courts in this District—including numerous judges of this Court—have adhered to this controlling precedent. See, e.g., Shula v. Lawent, 2004 U.S. Dist. LEXIS 17662, at *7-*8 (N.D. Ill. Sept. 2, 2004) (Keys, J.) (fully allowing "computerized legal research charges" as "costs" that were "both reasonable and necessary"); Stamm v. Provident Life & Accident Ins. Co., 2000 U.S. Dist. LEXIS 5521, at *6 (N.D. Ill. Apr. 7, 2000) (Plunkett, J.) ("The Seventh Circuit has held that computerized legal research is reimbursable as a reasonable expense of litigation."); In re Price, 143 B.R. 190, 199 (Bankr. N.D. Ill. 1992)

17

(Squires, J.) (allowing full reimbursement of Lexis expense), aff'd sub nom. Price v. United States (In re Price), 42 F.3d 1068 (7th Cir. 1994); In re Met-L-Wood Corp., 103 B.R. 972, 977 (Bankr. N.D. Ill. 1989) (Coar, J.) (allowing full reimbursement of computer research charges as "'actual and necessary' expenses"), aff'd, 115 B.R. 133 (N.D. Ill. 1990); In re Prairie Cent. Ry. Co., 87 B.R. 952, 960 (Bankr. N.D. Ill. 1988) (Squires, J.) (following earlier opinions of the Court to allow reimbursement of Lexis  and Westlaw research charges);  In re Wildman, 72 B.R. at 732 ("This Court adopts the view that computer research time that is both necessary and attributable to a particular client or case is reimbursable under Section 330(a)(2).") (emphasis in the original);  In re UAL Corp., Case No. 02-48191-ERW (Wedoff, C.J.), Order Approving Quarterly Application Of Vedder, Price, Kaufman & Kammholz, P.C. For Allowance And Payment Of Compensation And Reimbursement Of Expenses (Docket No. 15670) (allowing full reimbursement of $8,085.93 in online legal research charges);  In re Eagle Food Centers, Inc., Case No. 03-15299-CAD (Doyle, J.), Order Approving Third And Final Application Of Skadden, Arps, Slate, Meagher & Flom LLP Seeking Final Allowance And Payment Of Compensation And Reimbursement Of Expenses (Docket No. 1136) (allowing full expense reimbursement of $21,888 in "Computer Legal Research" during case period) (unpublished decision);  In re Conseco, Inc., Case No. 02-49672-CAD (Doyle, J.), Order Approving Final Application Of Jenner & Block LLP For Allowance Of Administrative Claim For Compensation And Reimbursement Of Expenses (Docket No. 6987) (allowing expense reimbursement of $139,934.07, including Westlaw and Lexis charges);  In re Wickes, Inc., Case No. 04-02221-BWB (Black, J.), Findings Of Fact And Conclusions Of Law In Support Of Order Awarding To DLA Piper Rudnick Gray Cary US LLP, Attorneys For Wickes, Inc., For Allowance And Payment Of Interim Compensation And Reimbursement Of Expenses (Docket No. 2935) (allowing expense reimbursement of $15,505.32, including Westlaw and Lexis charges).

18

61.     Finally, in seeking reimbursement for such costs, the Seventh Circuit has laid down guidelines, and cautioned, that an applicant "[is] not required to submit a bill of costs containing a description so detailed as to make it impossible economically to recover [ ] costs[, but] [r]ather [  ] [is] required to provide the best breakdown obtainable from retained records." Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co., 924 F.2d 633, 643 (7th Cir. 1991).

62.     In seeking reimbursement for the Incurred Expenses herein, Seyfarth has made every attempt to fully comply with these dictates.

### C.  Administrative Expense Priority

63.     Sections 503(a) and (b), and Section 507(a)(2), of the Bankruptcy Code permit the allowance and payment of administrative expenses.  11 U.S.C. §§ 503(a) & (b), & 507(a)(2).

64.     In In re DeMert & Dougherty, Inc., 227 B.R. 508, 512 (Bankr. N.D. Ill. 1998) (Squires, J.), the Court described the requirements imposed upon an administrative expense claimant, as follows:

> To be afforded administrative status, [an administrative expense claimant] must prove that the expenses claimed were both actual and necessary.  Expenditures must benefit the estate as a whole and not just the creditor claimant to qualify as actual and necessary expenses.  [The claimant] also must prove that the expenses for which it seeks administrative priority arose out of a transaction with the Debtor or the Trustee.
>
> A claim is not rendered a post-petition administrative priority claim merely by the fact that the time for payment is triggered by an event that happens after the filing of the petition.

227 B.R. at 512 (citations omitted).

65.     In reference to the foregoing standards, the Incurred Fees and Expenses:  (i) arose out of Seyfarth's postpetition retention by the Trustee;  (ii) are both actual and necessary;  and (iii) provided a commensurate benefit to the Trustee, the Estate's  constituents, and the Estate as

19

a whole.  Thus, under the instant facts, Seyfarth respectfully submits that its request that the

Incurred Fees and Expenses be allowed as an administrative expense should be granted.

## VII.  CONCLUSION

66.    The Incurred Fees and Expenses all arose in connection with the Case, and in the

discharge of Seyfarth's professional responsibilities to the Trustee during the Application Period.

Seyfarth respectfully submits that its legal services to the Trustee, and the fees charged therefore,

are in all respects reasonable, necessary, and of benefit to the Estate and its administration, and

that the expenses that Seyfarth incurred in rendering such legal services were actual and

necessary.

67.    Since its retention, as set forth in the Interim Applications, Seyfarth has provided

legal services to the Trustee and incurred expenses in rendering such legal services that were in

all respects reasonable, necessary, and of benefit to the Estate and its administration.

68.    For all of the foregoing reasons, Seyfarth respectfully submits that the relief

requested by this Application should be granted in full.

## VIII.  STATUS OF CASE

69.    With the exception of the Toberman Judgment, all of the assets of the Estate have

been liquidated and the claims have been resolved.  There is currently $479,945.64 on deposit in

the Estate's bank accounts.  The Trustee's Final Report has been filed concurrently with the

filing of this Application

70.    After payment of the Estate's allowed and unpaid Chapter 7 and Chapter 11

administrative claims, it appears that there will be sufficient funds to make a distribution to

general unsecured creditors in excess of 50% of allowed claims.

20

## X. **NO PRIOR REQUEST**

71.    No prior request for the relief requested by this Application has been made to this Court or to any other court.

WHEREFORE, Seyfarth Shaw LLP respectfully requests that the Court enter an Order:

A.    Allowing and awarding Seyfarth Shaw LLP the Incurred Fees and Expenses on a final basis and as an administrative expense of the Estate;

B.    Authorizing payment of such Incurred Fees and Expenses to Seyfarth from the funds on hand in the Estate as part of the Trustee's final distribution in this case;

C.    Allowing and awarding Seyfarth Shaw LLP that all amounts allowed and paid as interim compensation and expense reimbursement shall be deemed final allowances; and

D.    Granting such other and further relief as the Court may deem just and appropriate.

Dated:  June 14, 2011                          Respectfully submitted,

                                               SEYFARTH SHAW LLP


                                               By: /s/ James B. Sowka

Gus A. Paloian (06188186)
James B. Sowka (6291998)
M. Ryan Pinkston (6297427)
SEYFARTH SHAW LLP
131 South Dearborn Street
 Suite 2400
Chicago, Illinois 60603-5577
Telephone:  (312) 460-5000
Fax:  (312) 460-7000

13367286v.1

# EXHIBIT 1





**Ryan Pinkston**

Associate

**Chicago**

(312) 460-5578

# Ryan Pinkston

rpinkston@seyfarth.com

## Practice Areas

- **Commercial Litigation**
- **Bankruptcy, Workouts & Business Reorganization**

Mr. Pinkston is a bankruptcy associate in the Chicago office of Seyfarth Shaw LLP.
Mr. Pinkston's practice focuses on bankruptcy litigation, creditor rights, corporate
reorganizations, pre-bankruptcy planning and negotiations, and commercial
litigation.  Among other representations, Mr. Pinkston serves as counsel for secured
lenders, insurance companies, national banks, trade creditors, and chapter 7 and
chapter 11 bankruptcy trustees.  He has represented clients in both state and federal
trial and appellate courts in such diverse areas as commercial real estate
foreclosure, mass torts, insurance coverage disputes, chapter 11 plan confirmation,
bankruptcy asset sales, preference and fraudulent transfer prosecution and defense,
breach of contract, and civil rights.

Mr. Pinkston was recognized as a member of Seyfarth Shaw's 2010 Pro Bono Team
of the Year and as runner-up for 2010 Pro Bono Associate of the Year.  He is also
an active member and committee chair on the Associate Board of Ambassadors for
the American Cancer Society of Illinois.

## Education

J.D., Indiana University-Bloomington, *magna cum laude* (2008)

    Articles Editor, *Federal Communications Law Journal*
    Order of the Coif
    Dean's List (2005-2008)

B.A., Washington University in Saint Louis (2005)

## Admissions

- Illinois

## Courts

U.S. District Courts for the Northern, Central, and Southern Districts of Illinois

## Affiliations

- Chicago Bar Association

- American Cancer Society of Illinois, Associate Board of Ambassadors (Chair, Discovery Ball Sub-Committee)

### Publications

- Co-author, "The Implied Warranty of Habitability in Illinois: A Critical Review," 98 *Illinois Bar Journal* 92 (February 2010)

### Presentations

- Co-presenter, "Practice Pointers in Preference Litigation," Chicago Bar Association (April 5, 2011)

# EXHIBIT 2

## CASE ADMINISTRATION

| Date | Attorney | Description | Hours | Value |
|------|----------|-------------|-------|-------|
| 07/01/09 | J. McManus | Prepare Affidavit for retention of tax accountant. | 0.20 | 46.00 |
| 07/22/09 | J. McManus | Draft Order for S. Lorber regarding interim distribution to creditors. | 0.30 | 69.00 |
| 07/24/09 | J. McManus | Revise accountant affidavit (.20); revise service list (.20); revise motion (.30); prepare notice (.20). | 1.00 | 230.00 |
| 08/05/09 | J. McManus | Revise Gorman Affidavit (.20); confer with K. Gorman regarding potential conflicts (.10). | 0.30 | 69.00 |
| 08/10/09 | J. Sowka | Review (.10) and revise (.10) application to employ accountant. | 0.20 | 62.00 |
| 08/13/09 | J. McManus | Revise motion to retain accountant (.30); cause motion to be filed with the Court (.10); oversee service of same (.10). | 0.50 | 115.00 |
| 08/13/09 | N. Bouchard | Revise motion to retain accountant per J. Sowka. | 0.80 | 84.00 |
| 12/16/09 | N. Bouchard | Obtain copy of indictment against Toberman for G. Paloian. | 0.10 | 10.50 |
| 06/07/10 | J. McManus | Memo to Trustee regarding case status. | 0.10 | 23.50 |
| 03/15/11 | M. Pinkston | Legal research regarding reserving estate asset beyond closing of bankruptcy case. | 0.30 | 99.00 |
| 03/15/11 | R. Knapp | Memo to Trustee regarding Section 554(c) to reserve an asset at closing. | 0.20 | 46.00 |
| | | **TOTALS** | **4.00** | **$ 854.00** |

## FEE APPLICATIONS

| Date | Attorney | Description | Hours | Value |
|------|----------|-------------|-------|-------|
| 07/02/09 | J. McManus | Prepare exhibits to third Seyfarth fee application. | 0.60 | 138.00 |
| 07/07/09 | J. McManus | Prepare exhibits to third Seyfarth fee application. | 0.80 | 184.00 |
| 07/13/09 | J. McManus | Prepare exhibits to third fee application. | 0.70 | 161.00 |
| 07/14/09 | G. Paloian | Review exhibits to fee application (.20); and revise (.50). | 0.70 | 378.00 |
| 07/14/09 | J. McManus | Revise Fee Application per G. Paloian edits. | 0.40 | 92.00 |
| 07/21/09 | J. McManus | Further revisions to fee application. | 0.50 | 115.00 |
| 08/04/09 | J. McManus | Prepare pleading portion of Fee Application. | 0.50 | 115.00 |
| 08/05/09 | J. McManus | Further draft pleading portion of Seyfarth's Third Interim Fee Application (.40); retrieve materials in support (.20). | 0.60 | 138.00 |
| 08/06/09 | J. McManus | Finalize Seyfarth Fee Application (.80); assemble exhibits (.20); prepare Notice of Application (.20); revise Service List (.20); confer with J. Sowka regarding same (.10). | 1.50 | 345.00 |
| 08/07/09 | J. McManus | Revise fee application per J. Sowka. | 0.40 | 92.00 |
| 08/10/09 | J. Sowka | Review (.20) and revise (.10) third fee application for counsel for the trustee. | 0.30 | 93.00 |
| 08/10/09 | J. McManus | Confer with J. Sowka regarding Fee Application edits (.10); revise Fee Application (.60). | 0.70 | 161.00 |
| 08/11/09 | G. Paloian | Review fee application. | 0.30 | 162.00 |
| 08/12/09 | J. McManus | Revise Fee Application per G. Paloian comments. | 0.60 | 138.00 |
| 08/13/09 | J. McManus | Further revisions to 3rd fee application and exhibits (.70); confer with N. Bouchard regarding same (.10). | 0.80 | 184.00 |
| 08/13/09 | N. Bouchard | Revisions to time detail for Seyfarth's third interim fee application for J. McManus. | 0.80 | 84.00 |
| 08/14/09 | N. Bouchard | Revise time detail to Seyfarth's third interim fee application (.50); revise pleading portion regarding same (.30). | 0.30 | 31.50 |
| 08/20/09 | J. McManus | Prepare Seyfarth Fee Application for filing. | 0.60 | 138.00 |
| 08/24/09 | J. Sowka | Final review of fee application of Seyfarth Shaw for filling. | 0.20 | 62.00 |
| 08/24/09 | J. McManus | Revise service list (.10); cause fee application to be filed with the Court (.30); oversee service of same (.10). | 0.50 | 115.00 |

| Date | Attorney | Description | Hours | Value |
|------|----------|-------------|-------|-------|
| 09/23/09 | J. Sowka | Confer with J. McManus regarding status of case for purposes of fee application hearing. | 0.10 | 31.00 |
| 10/08/09 | J. Sowka | Review and revise fee application for Seyfarth Shaw as general counsel for the trustee. | 0.20 | 62.00 |
| 11/02/09 | J. McManus | Review Accountant Fee Application. | 0.40 | 92.00 |
| 05/21/10 | J. McManus | Prepare time detail in preparation of final fee application (.60); confer with G. Paloian regarding same (.10). | 0.70 | 164.50 |
| 09/22/10 | J. McManus | Revise time detail for preparation of final fee application. | 1.00 | 235.00 |
| 03/08/11 | J. McManus | Review time detail for final Seyfarth Fee Application (.30); draft Fee Application (.70). | 1.00 | 245.00 |
| 03/10/11 | J. McManus | Prepare Final Fee Application. | 1.10 | 269.50 |
| 03/15/11 | J. McManus | Prepare exhibits to Final Seyfarth Fee Application. | 0.80 | 196.00 |
| 03/16/11 | J. McManus | Revise exhibits to Final Seyfarth Application. | 0.60 | 147.00 |
| 03/21/11 | J. McManus | Edits to time detail for Seyfarth's Final Fee Application. | 0.60 | 147.00 |
| 04/29/11 | R. Knapp | Additional edits to Seyfarth Final Fee Application | 5.00 | 1,150.00 |
| | | **TOTALS** | **23.30** | **$5,665.50** |

3

## CLAIMS ADMINISTRATION AND ANALYSIS

| Date | Attorney | Description | Hours | Value |
|---|---|---|---|---|
| 11/25/08 | J. McManus | Review/analyze claims. | 0.40 | 88.00 |
| 11/30/08 | J. McManus | Analyze administrative claims for validity. | 0.30 | 66.00 |
| 01/09/09 | J. McManus | Continue claims review of administrative claims. | 0.60 | 138.00 |
| 04/02/09 | J. McManus | Review secured claims. | 0.30 | 69.00 |
| 05/21/09 | J. McManus | Review claims register (.10); analyze claims for case closing purposes (.30). | 0.40 | 92.00 |
| 07/15/09 | J. McManus | Analysis of claims register and various claims. | 0.40 | 92.00 |
| 07/21/09 | J. McManus | Review claim no. 6, GE Capital claims, regarding security interest (.20); telephone conference with claimant regarding same (.20); prepare Agreed Order (.30). | 0.70 | 161.00 |
| 07/29/09 | J. McManus | Further claims analysis for case closing. | 0.30 | 69.00 |
| 12/07/09 | N. Bouchard | Review unsecured claims in preparation of interim distribution (.50); update claims analysis spreadsheet for G. Paloian (.50); conversation with J. McManus regarding claims analysis (.20). | 1.20 | 126.00 |
| 12/14/09 | J. McManus | Review unresolved secured and priority claims (.20); discuss same with G. Paloian (.10); telephone conference with creditors regarding agreed orders (.20). | 0.50 | 115.00 |
| 12/16/09 | G. Paloian | Review claims docket (.40); review proof of claims (1.10); telephone conference with claimant representative regarding resolution of claim objections (.40); conference with J. McManus regarding same (.20). | 2.40 | 1,296.00 |
| 12/16/09 | J. McManus | Review claims (.30); assemble claims and related documentation for G. Paloian's review (.30); revise claims resolution spreadsheet (.30). | 0.90 | 207.00 |
| 12/16/09 | N. Bouchard | Review claims to provide G. Paloian with status of review (.20); download secured and priority claims for same (.20). | 0.40 | 42.00 |
| 12/17/09 | G. Paloian | Analysis of claims (.90); telephone conferences with claimants regarding resolution of objections (.80). | 1.70 | 918.00 |

4

| **Date** | **Attorney** | **Description** | **Hours** | **Value** |
|---|---|---|---|---|
| 12/17/09 | J. McManus | Conference with G. Paloian regarding claims review (.20); telephone conference with C. Gekas regarding Gekas & Associates claim (.10); prepare Agreed Order withdrawing Gekas claim (.40); telephone conference with T. Kelly regarding Prime LaSalle claim (.10); telephone conference with J. Larson regarding claim withdrawal (.10); assemble additional claims materials for G. Paloian (.30); review Gould Ratner claim (.10). | 1.30 | 299.00 |
| 12/17/09 | N. Bouchard | Review priority claim filed by The Lark Group regarding resolution of same (.30); phone call to same regarding status of debt (.20); review secured claim filed by James A. Larson P.C. regarding resolution of same (.30); phone conversation with James Larson regarding status of debt (.20); e-mail correspondence to same attaching copy of claim for review (.10). | 1.10 | 115.50 |
| 12/18/09 | J. McManus | Prepare Motions for Entry of Agreed Order regarding Claim Nos. 14 (.50) and 15 (.50); revise Agreed Orders (.40). | 1.40 | 322.00 |
| 12/18/09 | N. Bouchard | Draft motion (.60) and agreed order (.30) regarding disallowance of secured claim file by James A. Larson, P.C.; follow-up phone call to Russ Larko regarding proof of claim filed by same (.10). | 1.00 | 105.00 |
| 12/21/09 | G. Paloian | Revise motions for entry of agreed orders of Gekas (.50), Prime LaSalle (.60) and Larson (.50) resolving claims. | 1.60 | 864.00 |
| 12/21/09 | J. McManus | Prepare Motion (.40) and Agreed Order (.20) regarding Claim No. 6. | 0.60 | 138.00 |
| 12/21/09 | J. McManus | Continue investigation of secured claims status regarding Claim Nos. 6 (.40); confer with G. Paloian regarding same (.10). | 0.50 | 115.00 |
| 12/21/09 | N. Bouchard | Phone conversation with Russ Larko regarding claim filed by the Larko Group (.20); review back-up to claim to determine amount entitled to priority (.40); correspondence to R. Larko regarding claim (.20); revise motion (.10) and agreed order regarding claim filed by James A. Larson, P.C. (.10). | 1.10 | 115.50 |

5

| **Date** | **Attorney** | **Description** | **Hours** | **Value** |
|---|---|---|---|---|
| 12/22/09 | G. Paloian | Telephone conferences regarding creditor claims, objections and possible resolutions (.60); telephone conference with Jeff Broden of Prime Group regarding interim distribution (.60); review/revise agreed orders resolving claims (.40); prepare claim status report (.80). | 2.40 | 1,296.00 |
| 12/22/09 | J. McManus | Revise claims spreadsheet (.80); rerun interim distribution (.20). | 1.00 | 230.00 |
| 12/22/09 | N. Bouchard | Conversation with Russ Larko regarding resolution of claim filed by The Larko Group (.20); prepare motion for entry of agreed order and order regarding same (.80). | 1.00 | 105.00 |
| 12/23/09 | G. Paloian | Analysis of Madison LaSalle claim (.30); telephone conference with J. Broden regarding Madison LaSalle claim, status of claims review and interim distribution (.80); conference with N. Bouchard regarding claims review and investigation of various claims (.80). | 1.90 | 1,026.00 |
| 12/23/09 | J. McManus | Revise 3 Agreed Orders regarding claims. | 0.30 | 69.00 |
| 12/23/09 | N. Bouchard | Prepare for meeting with G. Paloian regarding status of claims review (.50); conference with G. Paloian regarding claims review (.80); download unsecured claims regarding same (.30); revise agreed order for claim filed by The Larko Group (.30); e-mail same to Russ Larko regarding execution of same (.20); continue review of unsecured claims (1.00). | 3.10 | 325.50 |
| 12/24/09 | J. McManus | Communications with GE Capital and Gekas and Associates regarding claims (.20); revise and forward Agreed Order to C. Gekas (.10); confer with N. Bouchard regarding follow-up on outstanding claims resolution (.10); revise claims ledger spreadsheet (.10). | 0.50 | 115.00 |
| 12/24/09 | N. Bouchard | Revise agreed order for James Larson (.10) and draft letter for execution regarding claim filed by same (.20); analyze claim filed by Whelan Security (.20). | 0.40 | 42.00 |
| 12/28/09 | G. Paloian | Review claims (.80); revise agreed orders regarding claims (.60). | 1.40 | 756.00 |

6

| **Date** | **Attorney** | **Description** | **Hours** | **Value** |
|---|---|---|---|---|
| 12/28/09 | N. Bouchard | Continue with review of unsecured claims in preparation for interim distribution (2.00); review case docket regarding resolution of claim filed by Gould & Ratner (.30); email correspondence to James Larson regarding claim filed by same (.20). | 3.00 | 315.00 |
| 12/29/09 | J. Sowka | Review email from C. Gekas regarding classification of claim for the Larko Group and draft email to N. Bouchard regarding same. | 0.10 | 31.00 |
| 12/29/09 | N. Bouchard | Phone conversation with counsel for Midwest Glass regarding withdrawal of duplicate proof of claim. | 0.10 | 10.50 |
| 12/30/09 | N. Bouchard | Prepare motion (.20) and agreed order (.10) regarding claims filed by Midwest Glass for G. Paloian. | 0.30 | 31.50 |
| 01/04/10 | N. Bouchard | Follow-up phone calls to multiple unsecured creditors regarding request for back-up to claims (.50); phone call to GE Capital regarding resolution of same (.20); continue with review of unsecured claims in preparation of interim distribution (1.00) | 1.70 | 187.00 |
| 01/06/10 | G. Paloian | Conference with J. McManus and N. Bouchard regarding resolution of objections to claims. | 0.40 | 222.00 |
| 01/06/10 | M. Pinkston | Review file regarding interim distribution of assets and resolution of open claims. | 0.60 | 177.00 |
| 01/06/10 | J. McManus | Conference with N. Bouchard regarding claims review and analysis status (.40); telephone conferences with claimants S. Pagnuset and Gekas regarding resolution of claims (.40); prepare Agreed Orders (.50). | 1.30 | 305.50 |
| 01/06/10 | N. Bouchard | Conference with J. McManus regarding status of claims review (.40); phone conversation with bankruptcy clerk regarding resolution of John Hancock/Prime LaSalle claims on claims register (.40); continue with review of unsecured claims (.80). | 1.60 | 176.00 |
| 01/07/10 | J. McManus | Telephone conference with S. Pagnuset (MDE) regarding Claim Nos. 12 and 13 regarding resolution of same (.20); prepare Motion for Entry of Agreed Order regarding same (.50); follow-up regarding Gekas Agreed Order (.20). | 0.90 | 211.50 |
| 01/08/10 | G. Paloian | Review (.10) and revise (.30) agreed orders resolving administrative and unsecured claims. | 0.40 | 222.00 |

7

| **Date** | **Attorney** | **Description** | **Hours** | **Value** |
|---|---|---|---|---|
| 01/08/10 | J. McManus | Investigate status of Claims 12 (.20) and 13 (.20). | 0.40 | 94.00 |
| 01/08/10 | N. Bouchard | Finalize motion and agreed order regarding Midwest Glass Co. (.20); e-mail correspondence to counsel for same regarding execution of agreed order (.30); further research for contact information regarding claim filed by Whelan Security of Illinois (.20); phone conversation with Mike Basler at Whelan Security regarding back-up documentation for claim (.20); phone conversation with Amy Schmidt regarding status and back-up for claim filed by CoFace North America (.30); phone conversation with John Beitler regarding resolution of claim filed by Friedman & Bietler Real Estate (.30); phone conversation with office manager at ACM Elevator regarding status and back-up for claim filed by same (.30); update claims status spreadsheet  (.30). | 2.10 | 231.00 |
| 01/11/10 | J. McManus | Telephone conference with S. Pagnuset regarding status of claims 12 & 13 (.10); investigate status of claims 22 & 23 (.20); e-mail communication to C. Gekas regarding claim 14 (.10); update claims spreadsheet (.10). | 0.50 | 117.50 |
| 01/11/10 | N. Bouchard | Prepare motion for entry of agreed order and agreed order regarding disallowance of claim filed by Friedman & Beitler Real Estate LLC (.40); update claims status chart (20). | 0.60 | 66.00 |
| 01/12/10 | J. McManus | Telephone conference G. Goodman regarding Claim No. 22. | 0.20 | 47.00 |
| 01/13/10 | N. Bouchard | Review secured claim filed by GE Capital (.20); phone conversation with account representative at same regarding status of debt and consent to reclassify (.30); e-mail correspondence to same attaching claim for review (.20). | 0.70 | 77.00 |
| 01/14/10 | J. McManus | Telephone conference with S. Pagnusat regarding withdrawal of MDE secured claim (.20); update spreadsheet regarding same (.10). | 0.30 | 70.50 |
| 01/15/10 | N. Bouchard | Review claim filed by MDE Thermal Technologies (.20); begin drafting motion for entry of agreed order and agreed order regarding same (.20). | 0.40 | 44.00 |

13367285v.1

| **Date** | **Attorney** | **Description** | **Hours** | **Value** |
|---|---|---|---|---|
| 01/19/10 | J. McManus | Follow-up regarding validity of Claim Nos. 22 and 23 (.20); telephone conference C. Gekas regarding Agreed Order (.10); confer with N. Bouchard regarding status of outstanding claims (.10); confer with S. Gramiak regarding Allied Barton Claim (.10); and update claim information regarding same (.10). | 0.60 | 141.00 |
| 01/19/10 | N. Bouchard | Discuss proof of claim filed by The Larko Group with J. Sowka (.10); revise motion for entry of agreed order and agreed order regarding same (.20); e-mail correspondence to Russ Larko regarding execution of agreed order (.20); finalize motion for the entry of agreed order regarding claim filed by MDE Thermal (.30); review invoices for claim filed by Whelan Security of Illinois (.20); follow-up phone call to Claimant, Coface North America, regarding further backup for proof of claim filed by same (.20); follow-up e-mail to contact at ACM Elevator regarding status of claim filed by same (.10); phone conversation with Don Seefeldt at Mark 1 Restoration regarding status of claim filed by same (.20); update claims status spreadsheet regarding same (.20); follow-up email to J. McManus regarding status of claims filed by Energon and Allied Barton Securities (.10). | 1.80 | 198.00 |
| 01/25/10 | N. Bouchard | E-mail correspondence to Jim Pagnusat regarding execution of agreed order disallowing the claim filed by MDE Thermal Technologies. | 0.20 | 22.00 |
| 01/27/10 | N. Bouchard | Follow-up email regarding claim filed by GE Capital (.10); update claims status chart (.20). | 0.30 | 33.00 |
| 01/28/10 | J. McManus | Communications with C. Gekas regarding Agreed Order. | 0.10 | 23.50 |
| 02/01/10 | J. McManus | Revise claims spreadsheet. | 0.20 | 47.00 |
| 02/01/10 | N. Bouchard | E-mail correspondence with Chris Gekas regarding withdrawal of claim filed by Gekas & Associates (.30); phone conversation with account manager regarding claim filed by ACM Elevator (.20); update claims status spreadsheet (.10). | 0.60 | 75.00 |
| 02/08/10 | J. McManus | Telephone conferences with J. Goodman and T. Kelly regarding claims resolution. | 0.20 | 47.00 |
| 02/09/10 | J. McManus | Confer with N. Bouchard regarding claims resolution status (.10); telephone conferences with claimants regarding potential distribution (.20). | 0.30 | 70.50 |

13367285v.1

| Date | Attorney | Description | Hours | Value |
|------|----------|-------------|-------|-------|
| 02/10/10 | N. Bouchard | Phone conversation with account representative at GE Capital regarding secured claim filed by same (.20); review back-up invoices for claim filed by ACM Elevator (.20); update claims spreadsheet (.20); e-mail correspondence to G. Paloian and J. McManus regarding status of claims review (.20). | 0.80 | 100.00 |
| 03/03/10 | J. McManus | Follow-up regarding Claim No. 6 regarding reclassification (.20); confer with N. Bouchard regarding same (.10). | 0.30 | 70.50 |
| 03/04/10 | J. McManus | Telephone conference with J. King regarding resolution of Claim No. 6 (.10); confer with G. Paloian regarding same (.10). | 0.20 | 47.00 |
| 03/05/10 | N. Bouchard | Revise motion for entry of agreed order and agreed order for claim filed by General Electric (.30); email same to agent for claimant for review and approval of proposed reclassification (.10). | 0.40 | 50.00 |
| 03/12/10 | J. McManus | Revise claims review spreadsheet. | 0.40 | 94.00 |
| 03/22/10 | J. McManus | Confer with N. Bouchard regarding retention of Nisen & Elliott regarding unresolved claim. | 0.10 | 23.50 |
| 03/23/10 | N. Bouchard | E-mail correspondence to Dan Dawson regarding interest in resolving same for the estate. | 0.30 | 37.50 |
| 04/05/10 | N. Bouchard | E-mail correspondence to Dan Dawson regarding resolution of secured claim filed by GE. | 0.20 | 25.00 |
| 04/13/10 | J. McManus | Telephone conference with T. Kelly regarding status of interim distribution (.10); telephone conference with D. Dawson regarding retention to handle claim objection (.10); revise claims distribution spreadsheet (.20). | 0.40 | 94.00 |
| 05/05/10 | J. McManus | Telephone conference with D. Dawson regarding status of secured claim resolution. | 0.10 | 23.50 |
| 05/13/10 | J. McManus | Telephone conference with D. Dawson regarding resolution of secured claim. | 0.10 | 23.50 |
| 05/24/10 | J. McManus | Telephone conference with T. Kelly regarding claims distribution status (.10); follow-up with D. Dawson regarding same (.10). | 0.20 | 47.00 |
| 07/23/10 | J. McManus | Correspondence to D. Dawson at Nisen & Elliott with claim background regarding settlement of secured claim. | 0.20 | 47.00 |
| 07/29/10 | J. McManus | Follow-up with D. Dawson regarding upcoming status hearing and status of claim resolution. | 0.10 | 23.50 |

13367285v.1

| Date | Attorney | Description | Hours | Value |
|------|----------|-------------|-------|-------|
| 08/10/10 | J. McManus | Follow-up with D. Dawson regarding status of unresolved claim. | 0.10 | 23.50 |
| 08/12/10 | J. Sowka | Review email from J. McManus regarding status of settlement discussions with G.E. regarding settlement of claim (.10). | 0.10 | 32.50 |
| 08/27/10 | J. McManus | Confer with D. Dawson regarding status of objection to secured claim. | 0.10 | 23.50 |
| 08/31/10 | J. McManus | Telephone conference with D. Dawson regarding objection to secured claim. | 0.10 | 23.50 |
| 09/10/10 | J. McManus | Follow-up with D. Dawson regarding motion to resolve secured claim. | 0.10 | 23.50 |
| 11/05/10 | G. Paloian | Review motion to determine value of secured claim. | 0.30 | 166.50 |
| 12/29/10 | R. Knapp | Further review and analysis of claim register and docket following request for information by creditor (Prime Leasing) to determine allowance of claim (regarding: claims 9, 10, 24) and possible distribution (.30); memo to J. McManus regarding: same (.10). | 0.40 | 88.00 |
| 03/31/11 | J. McManus | Assemble materials for filing of five motions for entry of Agreed Orders regarding claims regarding-classification (.40); confer with A. Shepro regarding same (.10). | 0.50 | 122.50 |
| 04/01/11 | A. Shepro | Retrieve Agreed Orders for disallowed claims (.20); discuss same with J. McManus (.10). | 0.30 | 25.50 |
| 04/01/11 | J. McManus | Confer with R. Podorovsky regarding Motions for Entry of Agreed Order regarding claims numbers 3, 5, 13, 15-2 and 16 (.20); review/revise motions (.40); conferences (2) with A. Shepro regarding finalizing and filing motions (.20). | 0.80 | 196.00 |
| 04/01/11 | R. Knapp | Finalize motion for entry of agreed order for claim 3 (.40); finalize motion for entry of agreed order for claim 13 (.40); finalize motion for entry of agreed order for claim 15 (.40); finalize motion for entry of agreed order for claim 16 (.40); finalize motion for entry of agreed order for claim 5 (.40). | 2.00 | 460.00 |
| 04/04/11 | J. Sowka | Confer with A. Shepro regarding filing of agreed motion to disallow claim of Thermal Technologies (.10); review and analyze proposed order regarding same (.10). | 0.20 | 75.00 |

11

13367285v.1

| Date | Attorney | Description | Hours | Value |
|------|----------|-------------|-------|-------|
| 04/04/11 | R. Knapp | Final review/edit of Motions for Entry of Agreed orders (.50, .10 each); phone conversation with J. McManus regarding: same (.20). | 0.70 | 161.00 |
| | | **TOTAL** | **60.50** | **$14,937.50** |

12

## ENFORCEMENT AND COLLECTION OF JUDGMENTS

| Date | Attorney | Description | Hours | Value |
|------|----------|-------------|-------|-------|
| 03/04/09 | N. Bouchard | E-mail executed copy of retainer agreement to collection counsel L. Bendell for G. Paloian (.20); assembly of documents evidencing debt for G. Paloian (.40). | 0.60 | 63.00 |
| 03/06/09 | J. McManus | Review retainer agreement for contingency fee counsel (10); confer with N. Bouchard regarding same (.10). | 0.20 | 46.00 |
| 03/06/09 | N. Bouchard | Complete referral form for Sprechman and Associates (.20); oversee service of checks regarding fees for domesticating Judgment to same (.30); email to Lenny Bendell requesting further information on fees associated with filing in Florida for G. Paloian (.10). | 0.60 | 63.00 |
| 04/24/09 | J. McManus | Follow-up with L. Bendell of Sprechman regarding status of domesticating judgment. | 0.20 | 46.00 |
| 04/27/09 | N. Bouchard | Phone conversations (two) with Lenny Bendell from Sprechman and Associates regarding domestication of Toberman Judgment (.30); discuss same with J. McManus (.20). | 0.50 | 52.50 |
| 05/13/09 | J. McManus | Telephone conference special counsel L. Bendell regarding domestication of judgment. | 0.10 | 23.00 |
| 05/18/09 | J. McManus | Telephone conference with special counsel L. Bendell regarding judgment collection. | 0.20 | 46.00 |
| 06/17/09 | J. McManus | Telephone conference with collection counsel L. Bendell regarding Toberman judgment collection status. | 0.10 | 23.00 |
| 07/01/09 | J. McManus | Telephone conference with special counsel L. Bendell regarding status of collection on Toberman judgment. | 0.10 | 23.00 |
| 07/08/09 | J. McManus | Follow-up regarding letter from special counsel L. Bendell regarding status of collection on Toberman judgment. | 0.10 | 23.00 |
| 07/15/09 | G. Paloian | Investigate status of enforcement of judgment against S. Toberman. | 0.20 | 108.00 |
| 07/16/09 | G. Paloian | Review status of collection of judgment against Toberman. | 0.40 | 216.00 |
| 07/22/09 | S. Lorber | Email correspondence with N. Bouchard regarding Toberman default judgment. | 0.10 | 40.50 |
| 08/19/09 | G. Paloian | Investigate status of enforcement of judgment. | 0.20 | 108.00 |

13

| Date | Attorney | Description | Hours | Value |
|------|----------|-------------|-------|-------|
| 09/16/09 | J. McManus | Communication with special counsel regarding status of collection. | 0.10 | 23.00 |
| 12/18/09 | J. McManus | Telephone conference with special counsel regarding collection status. | 0.10 | 23.00 |
| 12/21/09 | G. Paloian | Investigation of enforcement status against Toberman. | 0.20 | 108.00 |
| 08/10/10 | G. Paloian | Investigate status of enforcement of judgment against Toberman. | 0.30 | 166.50 |
| 08/10/10 | J. McManus | Follow-up with Florida special counsel regarding collection. | 0.10 | 23.50 |
| 08/11/10 | J. Sowka | Review and analyze documents regarding transfer of real property by former insider (.10); confer with J. McManus regarding enforcement of judgment against former insider (.10). | 0.20 | 65.00 |
| 11/16/10 | G. Paloian | Telephone conference with D. Rollman (Goodtrad counsel) regarding collection efforts. | 0.20 | 111.00 |
| 03/16/11 | M. Pinkston | Conference with J. McManus regarding potential sale of judgment against debtor's principal. | 0.10 | 33.00 |
| 04/07/11 | M. Pinkston | Exchange e-mail correspondence with G. Paloian, J McManus, and R. Knapp-Podorovsky regarding potential sale of judgment against debtor's principal | 0.10 | 33.00 |
| | | **TOTAL** | **5.00** | **$1,467.00** |

14

## CREDITOR INQUIRIES & COMMUNICATIONS

| Date | Attorney | Description | Hours | Value |
|------|----------|-------------|-------|-------|
| 03/22/10 | J. McManus | Telephone conference with counsel for claimants regarding status of distribution. | 0.10 | 23.50 |
| 04/19/10 | J. McManus | Telephone conference with claimants regarding distribution status. | 0.20 | 47.00 |
| 05/13/10 | J. McManus | Respond to claimant inquiries regarding interim distribution. | 0.10 | 23.50 |
| 06/17/10 | J. McManus | Respond to claimant's counsel's inquiries regarding distribution. | 0.20 | 47.00 |
| 06/29/10 | J. McManus | Respond to creditor inquiry regarding status. | 0.10 | 23.50 |
| 07/21/10 | J. McManus | Respond to counsel for claimants regarding distribution status. | 0.10 | 23.50 |
| 08/19/10 | J. McManus | Respond to creditor inquiries regarding case status. | 0.10 | 23.50 |
| | | **TOTAL** | **0.90** | **$ 211.50** |

15

**COURT APPEARANCES**

| Date | Attorney | Description | Hours | Value |
|------|----------|-------------|-------|-------|
| 07/22/09 | S. Lorber | Prepare for (.40) and attend status hearing on case (.40). | 0.80 | 324.00 |
| 07/22/09 | J. McManus | Assemble case status materials for S. Lorber in preparation for status hearing. | 0.40 | 92.00 |
| 08/26/09 | J. Sowka | Appear in court and present motion to retain accountant. | 0.60 | 186.00 |
| 08/26/09 | J. Sowka | Review case docket, court calendar, and motion to employ accountant in preparation for court appearance on same. | 0.30 | 93.00 |
| 09/23/09 | J. Sowka | Appear in court and present fee application. | 0.80 | 248.00 |
| 09/23/09 | J. Sowka | Review and analyze fee application, case docket, and court call in preparation for hearing on same. | 0.30 | 93.00 |
| 10/30/09 | J. McManus | Prepare case status memo for fee application hearing. | 0.40 | 92.00 |
| 01/05/10 | M. Pinkston | Conference with J. McManus regarding status of case and interim distribution in preparation for status hearing (.10); conference with J. Sowka regarding same (.10); review file and documents in preparation for status hearing (.20). | 0.40 | 118.00 |
| 01/05/10 | J. Sowka | Draft email to J. McManus and R. Pinkston regarding appearance for status hearing. | 0.10 | 32.50 |
| 01/05/10 | J. McManus | Prepare case status report for R. Pinkston in preparation for Court status hearing (.40); confer with R. Pinkston regarding same (.10). | 0.50 | 117.50 |
| 01/06/10 | M. Pinkston | Conference with G. Paloian regarding status of case (.10); represent G. Paloian, as chapter 7 trustee, at status hearing (.50). | 0.60 | 177.00 |
| 06/07/10 | J. McManus | Draft case status report for upcoming status hearing (.20); confer with R. Pinkston regarding same (.10). | 0.30 | 70.50 |
| 06/08/10 | J. McManus | Revise case status report for status hearing (.20); confer with G. Paloian and R. Pinkston regarding same (.10). | 0.30 | 70.50 |
| 06/09/10 | M. Pinkston | Represent G. Paloian at hearing regarding status of case. | 0.80 | 236.00 |
| 08/10/10 | J. McManus | Prepare case status report for status hearing (.10); confer with G. Paloian regarding same (.10). | 0.20 | 47.00 |

16

| **Date** | **Attorney** | **Description** | **Hours** | **Value** |
|---|---|---|---|---|
| 08/11/10 | J. Sowka | Confer with R. Pinkston and G. Paloian regarding hearing on case status (.10); review and analyze case docket and court call in preparation for hearing on same (.30); appear in court for status hearing (.50). | 0.90 | 292.50 |
| 11/17/10 | M. Pinkston | Conference with G. Paloian regarding status hearing (.1); conference with J. McManus regarding status hearing (.1) | 0.20 | 59.00 |
| 11/17/10 | M. Pinkston | Represent Chapter 7 trustee at status hearing. | 0.60 | 177.00 |
| 11/17/10 | J. McManus | Revise memo regarding case status in preparation for status hearing. | 0.10 | 23.50 |
| 03/15/11 | M. Pinkston | Conference with J. McManus regarding status hearing. | 0.10 | 33.00 |
| 03/15/11 | M. Pinkston | Conference with G. Paloian regarding status hearing. | 0.20 | 66.00 |
| 03/15/11 | M. Pinkston | Represent Chapter 7 trustee at status hearing. | 0.50 | 165.00 |
| 04/12/11 | J. Sowka | Review agreed motions resolving objections to claims 13, 16, 15-2, 5, 3 (.10); appear in court for hearing on same (.20). | <u>0.30</u> | <u>112.50</u> |
| | | **TOTAL** | **9.70** | **$2,925.50** |

17

# EXHIBIT 3

## DISBURSEMENTS

| Date | Disbursements | Value |
|------|---------------|-------|
| 08/13/09 | Copying   (931 copies @ $0.10 per page) | 93.10 |
| 08/25/09 | Copying   (634 copies @ $0.10 per page) | 63.40 |
| 10/21/09 | Copying   (153 copies @ $0.10 per page) | 15.30 |
| 10/30/09 | Copying   (105 copies @ $0.10 per page) | 10.50 |
| 11/06/09 | Copying   (125 copies @ $0.10 per page) | 12.50 |
| 11/13/09 | Copying   (352 copies @ $0.10 per page) | 35.20 |
| 11/18/09 | Copying   (285 copies @ $0.10 per page) | 28.50 |
| 12/02/09 | Copying   (2 copies @ $0.10 per page) | 0.20 |
| | **TOTALS** | **$ 258.70** |

13367285v.1